55 CCPA

**Application of Frank B. ROSENBERGER and Corwin R. Brandt.**

**Patent Appeal No. 7827.**

United States Court of Customs and Patent Appeals.

Dec. 7, 1967.

Rehearing Denied March 7, 1968.

George B. Campbell, New York City, Arthur J. Plantamura, Morristown, N. J., for appellants.

Joseph Schimmel, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the rejection of claims 1–4, 6–11, 13–17, and 19, all of the claims in the application.[1]

Appellants' invention is a method for producing a smooth, glossy, stain-resistant surface on molded plastic dinnerware. The method comprises, briefly, partially curing a preformed charge of a molding compound, placing a second particularly-defined granular amine-formaldehyde resin on the surface of the partially cured charge, and molding and curing the charge and the second resin in a manner to cause uniform flow of the second resin over the partially cured charge forming an integral coherent coating.

Claims 1 and 3 are illustrative:

1. A process of producing a molded thermoset object having a glossy, stain-resistant surface that comprises: introducing into a molding zone, a charge comprising a molding compound of a fusible, thermosetting resin of the group consisting of urea- and melamine-aldehyde resins; molding said charge while in said molding zone into a partially cured molded object; introducing, in granular form, on at least one surface of said object, a second, fusible, thermosetting resin of the group consisting of melamine- and benzoguanamine-aldehyde resins and which, as measured by "Flow Time Determination," has a flow time of from 1 to 15 seconds; continuing molding of said charge with said second, fusible, thermosetting resin thereon at a rate to cause flow of said second, fusible, thermosetting resin uniformly over the surface of said object prior to final curing of said charge and said fusible, thermosetting resin thereon; and thereafter continuing molding until said charge and said flowed resin thereon are finally cured as an integral object.

3. A process of producing a molded thermoset object of dished configuration having a glossy, stain-resistant generally concave surface that comprises: introducing into a molding zone a charge comprising a molding compound of a fusible, thermosetting resin of the group consisting of urea- and melamine-aldehyde resins; forming said charge into an object of dished configuration and partially curing the thermosetting resin; introducing, in granular form, on the resulting generally concave surface of the dished object and substantially centrally thereof, a second, fusible, thermosetting resin of the group consisting of melamine- and benzoguanamine-aldehyde resins and which, as measured by "Flow Time Determination," has a flow time of from 1 to 15 seconds; molding said dished object, while the generally concave surface thereof faces upwardly, with said second, fusible, thermosetting resin thereon by applying a downwardly directed force to said surface at a rate to cause flow of said second, fusible, thermosetting resin uniformly over said surface of said object prior to final curing of said charge and said fusible, thermosetting resin thereon; and thereafter, continuing molding of said object until said charge and said flowed resin thereon are finally cured as an integral object.

Claims 9, 10, 11, and 17 are similar to claim 3 but contain the further limitation that a decorative foil is interposed between the partially cured preform and the coating resin. Claim 2 is directed to the product produced by the process of claim 1.

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 30,435, filed May 20, 1960, for "Method of Imparting High Gloss and Stain-Resistance to Thermo-setting Molded Articles."

The references are:

| Nast | 2,244,565 | June 3, 1941 |
| Barlow et al. (Barlow) | 2,646,380 | July 21, 1953 |
| Varela et al. (Varela) | 2,781,553 | February 19, 1957 |

Varela was concerned with the same problem as appellants—the formation of a protective surface on molded dinnerware. In reviewing the prior art, Varela states:

Among the general methods of applying a surface to molding compositions are dusting, dipping, spraying and placing a pill preform of surfacing compound on a core preform and then molding. The dusting technique is utilized in a two-step molding process for glazing the top surface of fairly non-complex shapes such as plates and table tops. By this method, a suitable core material is partially cured, the mold then opened, a layer of surfacing resin dusted on the surface, and the cure of the material then completed. Such a surface, however, does not have adequate durability to resist cracking during thermal stress. * * * In the pill preform technique the general method is to place a charge in a mold and form a preform. The mold is opened after a set interval and an electronically warmed pill preform is inserted, the mold reclosed and the cure completed. Objects prepared in this manner do not pass the stoving and acid boil test. In the stoving test the object is maintained at an elevated temperature for an extended period, e. g., 77°C. and 8 hours, to test the surface coverage. The acid boil test also tests the surface coverage by placing the object in boiling acid for a certain period, e. g., 1% $H_2SO_4$ for 10 minutes. Due to the shrinkage difference between the base material and the coating material, cracking of the surfaces results. Also, the entire surfacing of the object is not always accomplished.

Varela claims to have solved these problems by spraying a solution of the coating resin on his mold, allowing the solvent to evaporate and the resultant film to partially cure, and then introducing molding compound into the mold. The molding of this compound with the coating on the mold causes fusion of the base compound and the film to form an integral coated object.

Nast teaches a process for producing molded articles from partially cured layers of thermosetting resin:

The process of the present invention is distinguished from such prior art process in that the article is produced by a single thermosetting operation, the button, bottle stopper, or similar article being produced in a single mold in which a quantity of synthetic resin of one color is first partially cured, a second layer of synthetic resin of a different color being thereafter placed over the first layer, the heated mold members being brought together so as to cure or set completely the synthetic resin of both layers by heat and pressure. * * *

My novel product may be formed of any suitable material, for instance, any of the well-known synthetic resins, including phenol formaldehyde resin, urea resin, or any other composition material. * * *

Barlow teaches improvements in applying a decorated sheet to a partially cured molded article:

According to the invention, the method of moulding an article from a thermosetting moulding powder comprises applying the required design to absorbent paper of a thickness of 1.5–7.0 thousandths of an inch, im-

pregnating the decorated paper with a synthetic resin varnish of the same or similar type as the thermosetting moulding powder, passing the impregnated paper between rolls to remove excess resin, drying the impregnated paper, moulding the article, opening the mould before curing is completed, applying the impregnated sheet to the surface to be decorated, replacing the article in the mould, completing the curing of the article, and removing the moulding.

Barlow does not mention placing a second resin over a partially cured decorated article.

The examiner rejected claims 1–3, 6–8, 13–16, and 19 as unpatentable over Varela or Nast, and claims 9–11 and 17 as unpatentable over Varela or Nast "with the addition of Barlow," and these rejections were affirmed by the board.

We cannot sustain the rejection insofar as it relies on the Varela reference. The examiner attempted to equate the process steps of the application to those of Varela by considering the sprayed-on mold coating of Varela to be equivalent to the molding resin charge of the application, and the molding resin charge of Varela to be equivalent to the coating resin of the application. This appears to be an extremely strained interpretation of the reference which could only be made by hindsight.

In his brief, the Solicitor argues:

Regardless of whether the examiner was correct in his usage of the term "equivalent," it is clear that the Board affirmed the examiner because the Board considered that it would be obvious to a person of ordinary skill in the art to use the dusting method disclosed by Varela et al. to be old in the art instead of the spraying method preferred by Varela et al. to apply the coating. * * *

We disagree. This argument assumes that Varela teaches that spraying the mold and dusting the preform are equivalent methods. This is incorrect, for Varela clearly teaches that the dusting and pill preform methods of coating yield unsatisfactory products. The teaching of Varela therefore discourages research in the very field where appellants made their invention. Appellants have shown prima facie by affidavit their products to be superior to those produced by the dusting and pill preform methods disclosed by Varela. They have invented a method for producing an effective protective coating in the face of art which strongly suggests that such a method would produce unacceptable results. This is the very antithesis of obviousness.

The Nast reference presents a different situation. Nast teaches the formation of a molded, partly cured preform, and the deposition of a "layer" of a second material over the preform. While Nast does not specify the physical characteristics of this layer, he does say it is a "like synthetic resin material of a second color," meaning like the first molding material. Since molding materials are commonly supplied in granular form, as evidenced by the Varela and Barlow references, it seems clear that Nast contemplates covering the preform with a granular material and subsequently molding to fuse the two layers. Nast covers his preform with a layer of a second resin, and is not therefore concerned with an outward flow of resin, as are appellants. The flow characteristics of the Nast resin are unimportant as long as that resin is moldable. This being so, the Nast reference contemplates resins of virtually any flow characteristics, including the resins specified by appellants. The only feature of appellants' invention which appears to distinguish it from the Nast process is the deposition of coating resin centrally of the molded preform, and its subsequent outward flow to form an integral coherent coating. This concept is not obvious from the Nast reference, and, as pointed out above, is quite unobvious from the Varela reference.

We, therefore, reverse the rejection of claims 3, 4, 6, 7, 8, 9, 10, 11, 15, 16 and 17, all of which express this inventive concept. However, we affirm the rejec-

tion of claims 1, 2, 13, 14, and 19 which do not appear to define the one feature which distinguishes appellants' invention from the process of Nast.

Claim 2 of appellants' application was also rejected as being an improper product by process claim. Since we find this claim to have been properly rejected on the prior art, it is unnecessary for us to consider this additional rejection.

The decision of the Board of Appeals is modified.

Modified.