**In the Matter of the Application of John McClure CARROLL.**

**Appeal No. 79–531.**

United States Court of Customs and Patent Appeals.

July 19, 1979.

Frederick C. Carver, New York City (Brumbaugh, Graves, Donohue & Raymond, New York City), for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, and MILLER, Judges, and RE,[*] Chief Judge.

RE, Chief Judge.

This is an appeal from the decision of the United States Patent and Trademark Office (PTO) Board of Appeals (board) sustaining the examiner's rejection under 35 U.S.C. § 103 of claims 1–4, all of the claims in application serial No. 527,359, filed November 26, 1974, for "Lauric Acid for the Prevention and Treatment of Mycobacterial Diseases," a continuation-in-part of application serial No. 230,115, filed February 28, 1972, a continuation of application serial No. 844,162, filed July 23, 1969. We reverse.

## BACKGROUND

The appellant, a veterinarian and pathologist, in 1965 authored a paper entitled "In Vitro and In Vivo Studies with Mycobacterium Paratuberculosis." Mycobacterium paratuberculosis (M. paratuberculosis) is a microorganism which causes the disease paratuberculosis, also known as Johne's disease, in cattle. The paper was submitted in partial fulfillment of his Master of Science degree from the University of Illinois, and was catalogued and retained in the library of the University of Illinois College of Veterinary Medicine. The paper discusses two types of studies conducted by appellant: in vitro (test tube) studies, from which appellant reported that lauric acid was completely inhibitory to the growth of three strains of M. paratuberculosis; and in vivo (live animal) studies, from which appellant reported the suitability of a certain strain of C57 black mice as laboratory animals for studies of diseases caused by M. paratuberculosis.

Hoping to have the thesis published, appellant asked Dr. Richard S. Merkal, a recognized expert in the field of mycobacterioses, and a member of the staff of the United States sponsored National Animal Disease Laboratory in Ames, Iowa, for a critique of the study. Dr. Merkal told appellant that the study was of no value because appellant used non-virulent strains of M. paratuberculosis, i. e., strains which do not cause paratuberculosis. Dr. Merkal also pointed out that even carefully performed in vitro testing using virulent strains of M. paratuberculosis would be unreliable in predicting the in vivo effect of a compound against paratuberculosis. The accuracy of Dr. Merkal's views is supported by a 1948 article, submitted by appellant, from the *Journal of Experimental Medicine,* Vol. 49, Nos. 3 and 4, entitled "Bactericidal and Bacteriostatic Action of 1–Rhodinic Acid, d–Citronellic Acid and Hinokitol Compared to the Action of Capric Acid and Its Closely Related Fatty Acids." This article, written by S. Katsura, K. Tamura, S. Hatori, and S. Maeda, reported that the in vitro and in vivo reactions of fatty acids (e. g., lauric acid) on TB bacillus differed.

Notwithstanding the shortcomings of the thesis and its conclusions, appellant continued to pursue his research. This time he

---

[*] The Honorable Edward D. Re, Chief Judge, United States Customs Court, sitting by designation.

conducted in vivo tests, first on black mice and guinea pigs, and then on cows. From this work, appellant discovered that mammals can be successfully treated for the prevention and cure of diseases caused by microorganisms of the genus Mycobacterium, e. g., M. paratuberculosis, by the oral administration of an effective dose of lauric acid. Appellant applied for a patent on this invention.[1]

The question presented on this appeal is whether appellant's claimed invention would have been rendered obvious by the earlier thesis. The availability of the thesis as prior art is not in dispute.

The PTO maintains that the claimed invention would have been obvious in view of the disclosure in appellant's thesis that lauric acid inhibited the growth of M. paratuberculosis, and that C57 black mice were suitable laboratory animals for the study of diseases caused by M. paratuberculosis. Appellant responds that, for the reasons given by Dr. Merkal, one skilled in this art would have given no weight to such a disclosure, and that, therefore, it would not have rendered the claimed invention obvious.

## OPINION

■ One of the more difficult aspects of resolving questions of non-obviousness is the necessity "to guard against slipping into use of hindsight." *Graham v. John Deere Co.*, 383 U.S. 1, 36, 86 S.Ct. 684, 703, 15 L.Ed.2d 545 (1965). Many inventions may seem obvious to everyone after they have been made. However, 35 U.S.C. § 103 instructs us to inquire into whether the claimed invention "would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Thus, in deciding the issue of obviousness, we must look at the prior art presented from a vantage point in time prior to when the invention was made, and through the eyes

of a hypothetical person of ordinary skill in the art.

■ In the case at bar, this task has been facilitated, because appellant has established, through affidavit evidence, what the single prior art reference before us actually taught an *actual* person of ordinary skill in this art at a time *prior* to the making of the claimed invention. Dr. Merkal, an expert in the field of mycobacterioses, the art to which the subject matter of the claimed invention pertains, read the thesis, and discounted it entirely. Dr. Merkal concluded that there was no support for appellant's conclusion that lauric acid was effective against paratuberculosis. He explained to appellant that the strains of M. paratuberculosis used in the studies were known to be non-virulent, i. e., they did not cause paratuberculosis. Furthermore, Dr. Merkal pointed out that in vitro testing was an unreliable indicator for the in vivo effectiveness of a compound against paratuberculosis.

Normally little weight is given to an expert's opinion on an ultimate legal question. See *In re Lindell*, 385 F.2d 453, 456, 55 CCPA 707, 710–11, 155 USPQ 521, 523–24 (1967) (opinion by applicant as to whether the claimed invention was obvious to him from the references), and *In re Chilowsky*, 306 F.2d 908, 916, 50 CCPA 806, 816, 134 USPQ 515, 521 (1962) (opinion by distinguished experts as to sufficiency of disclosure under 35 U.S.C. § 112). In this case, however, we consider Dr. Merkal's opinion, as to what the prior art taught, deserving of considerable deference. Unlike the usual expert opinion, prepared either by the applicant himself, or on his behalf after the controversy has arisen, Dr. Merkal's opinion was formulated prior to the making of the claimed invention. It was therefore completely untainted by either hindsight or bias.

We are persuaded by Dr. Merkal's contemporaneous evaluation of appellant's the-

1. Claim 1 is illustrative of the appealed claims:

    1. A method for treating diseases caused by Mycobacterium species selected from the group consisting of *M. tuberculosis* and *M.* *paratuberculosis* in mammals which comprises orally administering to mammals in need of said treatment, at regular intervals, an effective dose of lauric acid.

sis, that one skilled in this art would have given no weight to the findings reported therein. Therefore, we hold that they would not have rendered the claimed invention obvious.

Accordingly, for this reason, the decision of the board is *reversed.*

*REVERSED.*