889 F.2d 1101
 13 U.S.P.Q.2d 1568
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re Pattisapu R.J. GANGADHARAM.
 No. 89-1435.
 United States Court of Appeals, Federal Circuit.
 Oct. 27, 1989.
 
 Before MARKEY, Chief Judge, and FRIEDMAN and NIES, Circuit Judges.
 DECISION
 NIES, Circuit Judge.
 
 
 1
 Pattisapu R.J. Gangadharam appeals from the decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences, dated February 15, 1989, sustaining the examiner's final rejection of claims 1-12,[1] under 35 U.S.C. Sec. 103 (1982), in application Serial No. 890,720, filed July 30, 1986. We reverse.
 
 OPINION
 
 2
 The board effectively relied upon one reference, authored in part by the applicant, for its prima facie case of obviousness.[2] Relying on In re O'Farrell, 853 F.2d 894, 7 USPQ2d 1673 (Fed.Cir.1988), the Board affirmed the examiner's rejection of claims 1-10, stating that the examiner had established a prima facie case of obviousness of the claimed invention because "the teachings of Gangadharam considered as a whole would clearly have led one of ordinary skill in the art to use CQQ in the treatment of mammals infected with M. tuberculosis bacteria or M. intracellulare bacteria (as here claimed) with at least a reasonable expectation of success." In response to appellant's urging that in vitro results cannot be used to predict in vivo success, the board stated that "the very positive in vitro bactericidal activity of CQQ against the above mentioned bacteria reported by Gangadharam certainly favors the in vivo use of said compound in the treatment of tuberculosis in mammals" (emphasis added). While admitting that the "in vivo effectiveness of CQQ in mammals may not have been absolutely predictable from the in vitro results disclosed by Gangadharam," the board recited again from In re O'Farrell, and stated that: "We believe Gangadharam provides such reasonable expectation of success."
 
 
 3
 The issue presented by this appeal is not whether in vitro results can be used to predict in vivo success; rather it's simply whether the Patent and Trademark Office (PTO), in this case, carried its burden of proving a prima facie case of obviousness of the claimed invention. As one of our predecessor courts stated: "One of the more difficult aspects of resolving questions of non-obviousness is the necessity 'to guard against slipping into use of hindsight.' " In re Carroll, 601 F.2d 1184, 1186, 202 USPQ 571, 572 (CCPA 1979) (quoting Graham v. John Deere Co., 383 U.S. 1, 36 (1965)). The PTO's prima facie case here is of such character. The PTO had the burden of showing that the prior art would have taught or suggested the claimed invention to one of ordinary skill in the pertinent art, In re Clinton, 527 F.2d 1226, 1228, 188 USPQ 365, 367 (CCPA 1976), and that one of ordinary skill in the art would reasonably expect that the method suggested by the references would be successful. Id., see also In re O'Farrell, 853 F.2d at 904, 7 USPQ2d at 1681. "Both the suggestion and the expectation of success must be founded in the prior art, not in the applicant's disclosure." In re Dow Chem., Co., 837 F.2d 469, 473, 5 USPQ2d 1529, 1531 (Fed.Cir.1988). Thus, it was incumbent upon the PTO to show that the prior art would have suggested to one of ordinary skill in the art: (a) the treatment of tuberculosis in mammals, infected with tuberculosis-causing bacteria, using CQQ in an effective amount; and (b) a reasonable expectation that the administration of CQQ in a therapeutically effective amount to mammals infected with tuberculosis-causing bacteria would be successful.
 
 
 4
 The Board was satisfied that Gangadharam, particularly the following two excerpts, supported a prima facie case of obviousness. We are not. The excerpts cited by the board are as follows:
 
 
 5
 The activity of low concentrations of CQQ on M. tuberculosis is quite encouraging. Of particular significance is its activity on rifampin-resistant tubercle bacilli. This not only indicates a possible lack of cross resistance between CQQ and rifampin even though both compounds contain a naphthoquinone unit, but also offers a hopeful lead for treating rifampin-resistant tuberculosis.
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 ... These studies deal only with the in vitro antimycobacterial activity of this compound. Further investigations on its acute and chronic toxicity, experimental pharmacology, and its activity against infections in animal models are necessary before CQQ can be suggested as a possible antimycobacterial drug for treating humans with M. intracellulare disease. Based on these preliminary results, however, there is sufficient evidence to warrant further investigation.
 
 
 9
 The Board's prima facie case amounts to the general reference (using the excerpts) in Gangadharam of positive results that were obtained using CQQ in an entirely different context, in vitro, than that in which it is claimed, and precatory, encouraging statements relating to uncertain future investigations and possible results. That, the Board combined with a continuous recitation throughout its opinion of the notion that obviousness does not require absolute predictability of success, only a reasonable expectation of success. Assuming Gangadharam was a sufficient reference on which to base a prima facie case, the board failed to provide a synthesis of the evidence, and the law it was following, to show that the claimed invention "would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. Sec. 103. For instance, remarking that the positive in vitro results "favored" use in vivo does not meet the statutory standard. The Board's attempt to show that Gangadharam would have provided to one of ordinary skill in the art, a reasonable expectation that the claimed use of CQQ would be successful, fell woefully short of its burden.
 
 
 10
 References must be considered for all that they teach. W.L. Gore & Assoc. v. Garlock, Inc., 721 F.2d 1540, 1550, 220 USPQ 303, 311 (Fed.Cir.1983), cert. denied, 469 U.S. 851 (1984). A fair reading of the entire Gangadharam article, with its enumeration of all the variables that are necessary for the success of future in vivo use of CQQ, could indicate to one of ordinary skill in the art that there is not a reasonable expectation that CQQ could successfully be used in mammals as claimed. Any one of the enumerated variables might preclude the use of CQQ in mammals. A reasonable reading of the article by one of ordinary skill in the art could be that such an individual would not be informed one way or the other regarding the success of CQQ in mammals. Indeed, Schnitzer, Hawking, Experimental Chemotherapy, Vol. II Chemotherapy of Bacterial Infections Part I, (1964), indicates that perhaps one of ordinary skill in the art would not conclude, based on the results of the tests in the Gangadharam article, that there would be a reasonable expectation of success using CQQ in mammals. Specifically Schnitzer states at 89 that:
 
 
 11
 A drug with promising in vitro properties may still fail to qualify as a useful drug for many reasons, and can be accepted only after a thorough assessment of its pharmacologic, pathologic, and clinical effects. Its effectiveness in vivo must be proved, first in experimental animals and finally in naturally occurring infections in animals or man.
 
 Then later at 404 it states that:
 
 12
 However, care must be taken never to regard an in vitro procedure as equivalent to, and therefore a substitute for, an in vivo test. The many papers on the experimental chemotherapy of tuberculosis which have cited only the results of in vitro tests are meaningless insofar as the chemotherapy of tuberculosis disease is concerned.
 
 
 13
 As this court's predecessor made clear in In re Carroll, 601 F.2d 1184, 202 USPQ 571 (CCPA 1979), simply because a drug gives positive results in vitro, it does not necessarily follow that there is a reasonable probability of success for therapeutic use of that drug in vivo. As in Carroll, there is evidence in this record, specifically Schnitzer, regarding the noncorrelation of in vivo from in vitro efficacy generally and with respect to tuberculosis. See In re Dow Chem., Co., 837 F.2d at 473, 5 USPQ2d at 1532 ("The skepticism of an expert, expressed before these inventors proved him wrong, is entitled to fair evidentiary weight.").
 
 
 14
 We need not reach the other arguments, for example those relating to the affidavits, because we hold that the PTO failed to present a prima facie case of obviousness.
 
 
 
 [1]
 The board dismissed the appeal with respect to claims 11 and 12 because they were allowed to issue upon reconsideration by the examiner
 
 
 [2]
 The examiner's rejection was actually based on two prior art references: Gangadharam, Pratt, Damle, Davidson, Porter, Folkers, 118 American Review of Respiratory Disease, 467 (1978) [hereinafter Gangadharam]; and the abstract of that article in Chemical Abstracts