**In re the DOW CHEMICAL CO.**

**No. 87–1406.**

United States Court of Appeals, Federal Circuit.

Jan. 25, 1988.

Douglas N. Deline, The Dow Chemical Co., Midland, Mich., argued for appellant; with him on the brief was Bernd W. Sandt.

John H. Raubitschek, Associate Sol., Office of the Sol., Arlington, Va., argued for appellee; with him on the brief were Joseph F. Nakamura, Sol. and Fred E. McKelvey, Deputy Sol.

Before SMITH, NIES, and NEWMAN, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Dow Chemical Company appeals the decisions of the United States Patent and Trademark Office Board of Patent Appeals and Interferences, No. 86–3426 (Feb. 25, 1987) and No. 662–81 (Mar. 25, 1986), together rejecting all the claims on reexamination of United States Patent No. 3,919,354 entitled "Impact Resistant Polymers of a Resinous Copolymer of an Alkenyl Aromatic Monomer and an Unsaturated Dicarboxylic Anhydride.". We reverse.

### The Rejection

The invention is an impact resistant rubber-based resin having improved resistance to heat distortion. Claim 28, the broadest claim on appeal, is illustrative:

28. A polymer suitable for molding and extrusion, of substantially improved resistance to mechanical shock and impact, the polymer consisting essentially of the polymerization product of

a. a monovinyl alkenyl aromatic monomer containing up to 12 carbon atoms and having the alkenyl group attached directly to the benzene nucleus, the alkenyl aromatic compound being present in a proportion of from about 65 to 95 parts by weight and from 35 to 5 parts by weight of an unsaturated dicarboxylic acid anhyride readily copolymerizable therewith, and

b. from 5 to 35 parts by weight of a diene rubber per 100 parts of (a) plus (b), the rubber consisting essentially of 65 to 100 weight percent butadiene, or isoprene and up to 35 weight percent of an alkenyl aromatic hydrocarbon as the sole other monomer in the rubber, the rubber having a glass temperature not higher than 0° C., the rubber being in the form of a plurality of particles having diameters within the range of 0.02 to 30 microns dispersed throughout a matrix of polymer of alkenyl aromatic monomer and the anhydride, at least a major portion of the rubber particles containing distinct occlusions of the polymer of (a), with the further limitation that

the polymer of (a) is a nonequimolar random copolymer.

The preferred ingredients are styrene, maleic anhydride, and synthetic diene rubbers, and our discussion will be in these terms, as was the Board's.

The Board's decision that the claimed invention would have been obvious in terms of 35 U.S.C. § 103 was based on the combination of two references: a 1966 article by Molau and Keskkula entitled "Heterogeneous Polymer Systems IV. Mechanism of Rubber Particle Formation in Rubber–Modified Vinyl Polymers", and Baer U.S. Patent No. 2,971,939. Also discussed were Farmer U.S. Patent No. 2,275,951 and a publication by Bacon and Farmer entitled "The Interaction of Maleic Anhydride with Rubber", although the Board stated that the rejection was sustainable without relying on either of these references.

## The Prior Art

The Molau/Keskkula article shows the preparation of a resin having high impact strength by dissolving synthetic diene rubber in styrene and polymerizing the styrene. This reference teaches that phase inversion is necessary to the formation of these moldable, extrudable resins. Baer prepares nonequimolar random maleic anhydride-styrene copolymers by a technique whose salient feature is adding the maleic anhydride slowly to polymerizing styrene under controlled conditions.

Farmer shows the reaction among natural rubber, styrene, and maleic anhydride, and also states that maleic anhydride reacts directly with the rubber. The Bacon and Farmer article also shows the reaction of maleic anhydride with natural rubber. These products, according to Dow's evidence and as found by the Board, do not have a dispersed rubber phase containing occlusions, and are not moldable.

Dow argues that the Board has engaged in hindsight reconstruction of the claimed invention. To support its position Dow refers to several scientific publications and other references, in addition to those cited by the PTO, and evidence submitted by declaration and deposition.

The first group of references to which Dow refers shows the reaction of maleic anhydride with natural or synthetic rubbers. These references show both intermolecular and intramolecular reactions between maleic anhydride and the various rubbers, but not a grafted rubber, which is said by Dow to characterize its product. Additional references are cited by Dow to show that maleic anhydride is much more reactive with diene-type synthetic rubbers than with natural rubber, and that the reaction with the synthetic rubbers is difficult to control and the product is unpredictable.

Another reference cited by Dow, the *Encyclopedia of Science and Technology,* states the general rule, derived from experience with acrylonitrile, that copolymers with synthetic diene rubbers have elevated glass transition temperatures; Dow advises that this is a highly undesirable property for a high-impact strength resin.

Another series of references cited by Dow shows several known techniques of reacting styrene and maleic anhydride to prepare nonequimolar copolymers, all different from the technique shown in the Baer patent.

## Analysis

The Board held that the claimed product results from the application of the Baer technique to a styrene-maleic anhydride polymer system which includes synthetic diene rubber, and that it would have been obvious to do that which these inventors did if one wanted to increase the heat stability of a known high impact styrene rubber resin.

The crux of Dow's argument is that no reference shows or suggests that these references should or could be combined successfully. Indeed, the Board agreed, stating that "[i]t is not apparent from the evidence whether rubber and maleic anhydride would have been expected to react *in the process suggested by the combined disclosure of Molau and Baer....*" (Emphasis in original).

Dow also points out, referring to the Keskkula evidence, that it was believed that these products could not be made by

the mass polymerization techniques of the prior art. Dow asserts that no reference, including Baer, suggested that the Baer technique could produce the requisite phase inversion in a system containing diene rubber, and could produce a diene-rubber containing resin that could be molded and had the other desired high-impact and thermal properties.

Dow refers to the Farmer patent, cited by the examiner and the Board, which shows that the reaction of styrene, maleic anhydride, and natural rubber forms a product that is unsuitable as a molding resin. Dow argues that Farmer leads away from the Dow invention, in that Farmer obtains precisely the "runaway" reaction, and undesirable product, that Keskkula believed was characteristic of reactions involving styrene, maleic anhydride, and rubbers. Dow points to Dr. Keskkula's Report to Dow management, written in 1966 at about the time the present invention was made, pointing out the many problems in attempting to produce the three-component product that these inventors later succeeded in producing.

In response, the Commissioner argues that even though an expert polymer scientist, Dr. Keskkula, "personally may have been surprised by the invention at the time it was made, it does not necessarily follow that the invention would have been unobvious to one of ordinary skill in the art." The Commissioner suggests that one less encumbered by knowledge of the need for phase inversion, as described in the Molau/Keskkula article, might have achieved the Dow product by combining the references in the way suggested by the Commissioner. Reflecting on this theory of invention, we observe that such a person did not do so, despite the decades of experimentation with these components, and the recognition of need, as evidenced by the many references cited by both sides. *See In re Geiger,* 815 F.2d 686, 688, 2 USPQ2d 1276, 1278 (Fed.Cir.1987); *ACS Hospital Systems, Inc. v. Montefiore Hospital,* 732 F.2d 1572, 1577, 221 USPQ 929, 933 (Fed.Cir. 1984).

The Board held that Dow's statement in the patent specification that it was known that styrene/maleic anhydride copolymers had improved heat resistance as compared with styrene rubbers, made it prima facie obvious to combine these three components. Indeed, the record shows that such combinations had previously been made, in various ways, but without producing the product here desired. That there were other attempts, and various combinations and procedures tried in the past, does not render obvious the later successful one. The PTO's reliance on Dow's "admission" of longfelt need as prima facie evidence of obviousness is contrary to logic as well as law. Recognition of need, and difficulties encountered by those skilled in the field, are classical indicia of unobviousness. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966); *Custom Accessories v. Jeffrey–Allan Industries,* 807 F.2d 955, 960, 1 USPQ2d 1196, 1199 (Fed.Cir.1986). Further, a patent applicant's statement of the purpose of the work is not prior art.

The Board thus concluded that although one would not know in advance whether the Baer technique would work at all in the presence of diene rubber, or produce a moldable high-impact product, if it did succeed it would have been obvious The Board criticized Keskkula's evidence for not stating whether, after these inventors proposed the procedure here at issue, Keskkula would have expected the maleic anhydride to react preferentially with the diene rubber or with the styrene and to what effect on the impact properties of the product. The PTO argues that unless the prior art is shown to have led one of ordinary skill to expect the Baer technique to fail, the applicant's burden is not met. This is not the criterion. That these inventors eventually succeeded when they and others had failed does not mean that they or their colleagues must have expected each new idea to fail. Most technological advance is the fruit of methodical, persistent investigation, as is recognized in 35 U.S.C. § 103 ("Patentability shall not be negatived by the manner in which the invention was made").

The consistent criterion for determination of obviousness is whether the prior art would have suggested to one of ordinary skill in the art that this process should be carried out and would have a reasonable likelihood of success, viewed in the light of the prior art. *See Burlington Industries v. Quigg*, 822 F.2d 1581, 1583, 3 USPQ2d 1436, 1438 (Fed.Cir.1987); *In re Hedges*, 783 F.2d 1038, 1041, 228 USPQ 685, 687 (Fed.Cir.1986); *Orthopedic Equipment Co. v. United States*, 702 F.2d 1005, 1013, 217 USPQ 193, 200 (Fed.Cir.1983); *In re Rinehart*, 531 F.2d 1048, 1053–54, 189 USPQ 143, 148 (CCPA 1976). Both the suggestion and the expectation of success must be founded in the prior art, not in the applicant's disclosure.

In determining whether such a suggestion can fairly be gleaned from the prior art, the full field of the invention must be considered; for the person of ordinary skill is charged with knowledge of the entire body of technological literature, including that which might lead away from the claimed invention. The Commissioner argues that since the PTO is no longer relying on Farmer or the Bacon and Farmer article, the applicant is creating a "straw man". It is indeed pertinent that these references teach against the present invention. Evidence that supports, rather than negates, patentability must be fairly considered.

The PTO presents, in essence, an "obvious to experiment" standard for obviousness. However, selective hindsight is no more applicable to the design of experiments than it is to the combination of prior art teachings. There must be a reason or suggestion in the art for selecting the procedure used, other than the knowledge learned from the applicant's disclosure. *Interconnect Planning Corporation v. Feil*, 774 F.2d 1132, 1143, 227 USPQ 543, 551 (Fed.Cir.1985). Of the many scientific publications cited by both Dow and the PTO, none suggests that any process could be used successfully in this three-component system, to produce this product having the desired properties. The skepticism of an expert, expressed before these inventors proved him wrong, is entitled to fair evidentiary weight, *see In re Piasecki*, 745 F.2d 1468, 1475, 223 USPQ 785, 790 (Fed. Cir.1984); *In re Zeidler*, 682 F.2d 961, 966, 215 USPQ 490, 494 (CCPA 1982), as are the five to six years of research that preceded the claimed invention. The evidence as a whole does not support the PTO's conclusion that the claimed invention would have been obvious in terms of 35 U.S.C. § 103.

REVERSED.