MEMORANDUM ORDER
 

 JORDAN, District Judge.
 

 I. INTRODUCTION
 

 Presently before me is a Motion for Summary Judgment of Invalidity filed by
 
 *DCLXXVI
 
 defendant Compo Micro Tech (“CMT”; the “Motion”). (Docket Item [“D.I.”] 298.) For the reasons that follow, CMT’s Motion will be denied.
 

 II. BACKGROUND
 

 Plaintiffs Philips Electronics North America Corporation and U.S. Philips Corporation (collectively, “Philips”) allege that CMT infringes claims 1, 3 and 4 of U.S. Patent No. 4,703,359, entitled “Universal remote control unit with model identification capability” (issued October 27, 1987) (“the ’359 patent”) and all of the claims of U.S. Patent No. 5,872,562, entitled “Universal remote control transmitter with simplified device identification” (issued February 16,1999) (“the ’562 patent”). On April 5, 2004, I issued a memorandum opinion and order granting Philips’ Motion for Summary Judgment (D.I. 292) that CMT’s accused devices literally infringe claims 1, 3, and 4 of the ’359 patent and granting CMT’s Motion for Summary Judgment of Noninfringement (D.I. 302) of all of the claims of the ’562 patent. In addition, the procedural and factual background and a discussion of the technology disclosed in the patents-in-suit may be found in several prior opinions and orders issued in this case.
 
 (See
 
 D.I. 351 (denying Remote Solution’s motion to dismiss for lack of personal jurisdiction); D.I. 352, 353 (granting CMT’s motion to sever and for separate trials); D.I. 376, 377 (claim construction).)
 

 III. STANDARD OF REVIEW
 

 Federal Rule of Civil Procedure 56 states that summary judgment should be granted when “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to judgment as a matter of law.
 
 Adickes v. S.H. Kress & Co.,
 
 398 U.S. 144, 151-60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party also bears the responsibility of informing the court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to “set forth specific facts showing that there is a genuine issue for trial.” Fed. R.Civ.P. 56(e);
 
 see also Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
 

 When a party challenges a patent’s validity, the court begins with the statutory presumption of validity. 35 U.S.C. § 282 (“A patent shall be presumed valid.”). Accordingly, “the burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.”
 
 Id.
 
 Invalidity must be shown by clear and convincing evidence.
 
 Robotic Vision Sys. v. View Eng’g, Inc.,
 
 189 F.3d 1370, 1377 (Fed.Cir.1999). This presumption of validity is never weakened, and the burden of proving invalidity does not shift from the party asserting invalidity.
 
 Imperial Chemical Industries, PLC v. Danbury Pharmacol, Inc., 745
 
 F.Supp. 998, 1004 (D.Del.1990) (citing
 
 ACS Hospital Systems, Inc. v. Montefiore Hospital,
 
 732 F.2d 1572, 1574-75 (Fed.Cir.1984) (other citations omitted)). The burden of going forward with evidence rebutting invalidity may shift to the patentee only after the party asserting invalidity has demonstrated a legally sufficient
 
 prima facie
 
 case of invalidity.
 
 Ashland Oil, Inc. v. Delta Resins & Refracto
 
 
 *DCLXXVII
 

 ries, Inc.,
 
 776 F.2d 281, 291 (Fed.Cir.1985). If the party asserting invalidity has established a legally sufficient case of invalidity, the court then examines all of the evidence of invalidity together with all of the evidence rebutting invalidity, and determines whether there is clear and convincing evidence of invalidity.
 
 Id.
 
 at 291-92.
 

 IV. DISCUSSION
 

 A.
 
 The ’359 Patent
 

 CMT argues that claim 1 of the ’359 patent is invalid as anticipated by Japanese Patent No. 59-140792 (“the JP ’792 patent”). (D.I. 299 at 33.) CMT further argues that claims 3 and 4 of the ’359 patent are also invalid as anticipated by the JP ’792 patent, or alternatively, that they are invalid as obvious by the JP ’792 patent in combination with U.S. Patent No. 4,482,947 (“the ’947 patent”), in light of U.S. Patent No. 4,623,887 (“the ’887 patent”).
 
 (Id.)
 
 Finally, CMT says that claim 3 of the ’359 patent is invalid as anticipated in light of German Patent No. 33 13 493 (“the DE ’493 patent”).
 
 (Id.)
 

 Philips argues that the JP ’792 patent does not describe any technique by which a user may program a universal remote control (“URC”) to control an appliance, and thus claim 1 of the ’359 patent is not anticipated by the JP ’792 patent. (D.I. 315 at 10.) Philips further argues that, because claims 3 and 4 depend from claim 1, summary judgment of invalidity of these claims must be denied for the same reason it must be denied on claim 1.
 
 (Id.
 
 at 11.) Philips also argues that, in order to establish obviousness, CMT must come forward with clear and convincing evidence that “there is reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references...” and that CMT has failed to meet this burden.
 
 (Id.
 
 at 12) (quoting
 
 Smiths Industries Medical Sys., Inc. v. Vital Signs, Inc.,
 
 183 F.3d 1347, 1356 (Fed.Cir.1999).)
 

 Anticipation requires that each and every element of the claimed invention be disclosed in a single prior art reference.
 
 In re Paulsen,
 
 30 F.3d 1475, 1478 (Fed.Cir.1994). In other words, if any claimed element is missing from the prior art reference, it cannot anticipate the claimed invention.
 
 Kloster Speedsteel AB v. Crucible Inc.,
 
 793 F.2d 1565, 1571 (Fed.Cir.1986) (citation omitted). In its Motion, CMT interprets the JP ’792 patent as anticipating each and every limitation set forth in claim 1 of the ’359 patent.
 
 (See
 
 D.I. 299 at 33-36; D.I. 330 at 16-18.) Philips opposes CMT’s Motion, disputes CMT’s interpretation of the JP ’792 patent, and cites the report of its technical expert to prove that the JP ’792 patent does not disclose the scan programming method claimed by the ’359 patent.
 
 (See
 
 D.I. 315 8-10.) CMT replies by reiterating its original argument and expert testimony to support its interpretation of the JP ’792 patent.
 
 (See
 
 D.I. 330 at 16-18.)
 

 As one example, CMT argues that the following language from the JP ’792 patent describes “a step for transmitting a plurality of response command signals in sequence” and that “[e]ach code transmitted corresponds to a different signal structure”:
 

 [A] test is carried out to see if the inverted code and the equipment selection code agree with each other, and, in the case of agreement, the equipment to be controlled is activated by a remote control device.
 

 (D.I. 299 at 35.) Philips argues that “[t]his says nothing about a sequential transmission of commands in different signal structures.” (D.I. 315 at 10.) CMT responds that, under its expert’s interpretation of the JP ’792 patent, the cited language
 
 *DCLXXVIII
 
 means that “the user is ‘transmitting in sequence a plurality of response command signals each commanding said predetermined action in a different signal structure,’ as recited in claim 1 of the ’359 patent.” (D.I. 330 at 16.)
 

 On the basis of the record before me, I find that CMT has not come forward with clear and convincing evidence that claim 1 of the ’359 patent is anticipated by the JP ’792 patent. Specifically, there are genuine issues of material fact, due to competing expert opinions, as to what is disclosed and claimed by the JP ’792 patent. Therefore, summary judgment as to whether claims 1, 3 and 4 of the ’359 patent are anticipated by the JP ’792 patent is inappropriate.
 

 CMT also argues that claims 3 and 4 of the ’359 patent are invalid as obvious by the JP ’792 patent in combination with the ’947 patent in light of the ’887 patent and that claim 3 is invalid as obvious in light of the DE ’493 patent. (D.I. 299 at 33.) A patent is invalid for obviousness under 35 U.S.C. § 103
 

 if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.
 

 35 U.S.C. § 103(a). The ultimate determination of obviousness is a question of law based on underlying factual inquiries.
 
 See Rockwell Corp. v. United States,
 
 147 F.3d 1358, 1362 (Fed.Cir.1998) (citation omitted). These inquiries include determining (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the pertinent art and (4) secondary considerations, which include objective evidence of nonobviousness such as long-felt but unsolved need, failure of others, and commercial success.
 
 Graham v. Deere,
 
 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Furthermore, for a claim to be invalid as obvious over a combination of references, there must be a showing of a suggestion or motivation to modify the teaching of a prior art reference.
 
 SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.,
 
 225 F.3d 1349, 1356 (Fed.Cir.2000).
 

 Nowhere in its briefing has CMT has undertaken the analysis, required by
 
 Graham,
 
 to support its argument that claims 3 and 4 are obvious in light of the cited prior art references.
 
 See Greenwood v. Hatton Seiko Co. Ltd.,
 
 900 F.2d 238, 241 (Fed.Cir.1990) (noting that a district court cannot make a summary adjudication on obviousness without undertaking a
 
 Graham
 
 analysis). Nor has CMT come forward with clear and convincing evidence that there was a suggestion or motivation to combine the teachings of the JP ’792 patent with the ’947 patent in light of the ’887 patent. For these reasons, summary judgment that claims 3 and 4 of the ’359 patent are invalid due to obviousness is also inappropriate, and CMT’s Motion will be denied with respect to the ’359 patent.
 

 B.
 
 The ’562 Patent
 

 CMT argues that the ’562 patent is invalid because each of its claims are anticipated by Japanese Patent No. 59-138195 (“the JP ’195 patent”). (D.I. 299 at 11-12.) CMT further argues that ’562 patent is invalid on the basis of prior art not considered by the U.S. Patent and Trademark Office (“PTO”). Specifically, CMT says that the combination of a remote control device called “CORE” and its accompanying Reference Manual anticipates all of the claims of the ’562 patent.
 
 (Id.
 
 at 12.) Finally, CMT argues that two remote controls (the UR1 and UR2) that Philips sold
 
 *DCLXXIX
 
 in the United States in 1986 constitute prior art that invalidates the ’562 patent.
 
 (Id.
 
 at 29.)
 

 Philips argues that none of the prior art cited by CMT has the “combination of a permanent memory for storing formatting data for multiple appliances of the same category and selection of the formatting data to be used by direct, manual code entry” that is claimed by the ’562 patent. (D.I. 315 at 13.) Further, Philips says that, during prosecution of the ’562 patent, it informed the PTO that URCs with scan programming were known in the art and described the scanning technique of the ’359 patent in the ’562 patent application. (Id at 14.) Philips also argues that CMT has not established that the CORE device is prior art, but even if it is, that the CORE device does not anticipate the ’562 patent.
 
 (See id.
 
 at 18-22.) Finally, Philips argues that the JP ’195 patent was cited to and considered by the PTO, and, in any case, does not anticipate the ’562 patent.
 
 (See id.
 
 at 23-26.)
 

 As to whether the CORE device constitutes prior art, CMT states that the CORE device, which it describes as a URC “conceived of and developed by Steve Wozniak, one of the co-founders of Apple Computers,” was on display at a trade show in January 1987. (D.I. 330 at 5.) Philips says that, because the ’562 inventors completed their invention no later than August 1986, the CORE device and Reference Manual cannot be considered prior art under 35 U.S.C. §§ 102(a) and (g)
 
 [1]
 
 , since both statutory provisions require the asserted prior art to have been known, used, or invented
 
 before
 
 the invention by the patentee. (D.I. 315 at 18 (emphasis added).) CMT argues that “the CORE device was conceived of well before [August 1986]... [m]ore specifically, [that it] was conceived no later than 1985, at which time the developers... ordered microprocessors for the device and generated numerous circuit drawings.... ” (D.I. 330 at 6 n. 1.) I find that there is a genuine issue of material fact as to the date that the CORE device was known, used, or invented, and summary judgment as to whether it constitutes invalidating prior art under 35 U.S.C. §§ 102(a) and (g) is inappropriate.
 

 I also find that there is a genuine issue of material fact as to whether the Reference Manual was published prior to the critical date of the ’562 patent, pursuant to 35 U.S.C. § 102(b)
 
 [2]
 
 . The critical date in this case (that is, one year prior to the filing date of the ’562 patent) is March 4, 1987. CMT says that the Reference Manual was copyrighted in 1987 and published prior to March 1987, according to a declaration filed by Charles Van Dusen, a co-inventor of the CORE device. (D.I. 330 at 5.) However, Philips points to evidence that calls the publication date of the Reference Manual into question, including,
 
 inter alia,
 
 a statement from the marketing plan for the CORE device which contemplates
 
 *DCLXXX
 
 producing “200 units in May, with significant production beginning in mid-June” of 1987.
 
 (See
 
 D.I. 315 at 20 n. 7.) Philips argues that a fair inference from the marketing plan is that the Reference Manual, which was to be sold in conjunction with the CORE device, was not published or sold until after March 4, 1987.
 
 {Id.)
 
 Because there is an issue of material fact regarding the publication date of the Reference Manual, I find that summary judgment that it constitutes invalidating prior art under 35 U.S.C. § 102(b) is inappropriate.
 

 Even assuming that the CORE device and the Reference Manual constitute prior art, CMT has still failed to meet its burden of proving anticipation by clear and convincing evidence, as there are numerous issues of material fact in the present record. For example, Philips argues that the CORE device does not permanently store “formatting data” or “signal formats” in its memory, as required by claims 1 and 9 of the ’562 patent. (D.I. 315 at 21.) In response, CMT says that the CORE device “contains sixteen ‘pages’ to store pre-set or pre-program codes associated with sixteen difference appliances,” which constitute the “formatting data” and “signal formats” limitations of claims 1 and 9. (D.I. 330 at 6-7.) Thus, the parties dispute whether these “pages” meet the limitations of the ’562 patent claims. As previously discussed
 
 (see supra
 
 at p. 635), anticipation requires that each and every element of a claimed invention is disclosed in a cited prior art reference, and CMT has failed to meet its burden to demonstrate that here by clear and convincing evidence.
 

 There is also a genuine issue of material fact as to whether Philips adequately disclosed the UR1 and UR2 remote controls to the PTO. CMT says that the UR1 and UR2 remote controls are invalidating prior art that was never disclosed to the PTO. (D.I. 299 at 30.) In response, Philips says that it made admissions about the content of the prior art in the application of the ’562 patent, explicitly stating that URCs with scan programming (like the UR1 and UR2) were known in the art. (D.I. 315 at 14.) Philips cites to an decision from the Board of Patent Appeals and Interferences and one of the Examiner’s office actions to prove that the PTO considered these admissions during prosecution.
 
 (Id.)
 
 CMT says that neither the Board nor the Examiner ever considered these admissions, and, in any case, the admissions do not show that someone skilled in the art would be aware of URCs with scan programming. (D.I. 330 at 8.)
 

 Yet another genuine issue of material fact exists as to whether the Examiner considered the ’359 patent during prosecution of the ’562 patent. CMT says that the Examiner did not have the ’359 patent before him as a prior art reference of record during prosecution of the ’562 patent. (D.I. 299 at 31.) Philips argues that the Examiner was fully informed of the ’359 patent by virtue of the multiple citations to the ’359 patent in the ’562 application. (D.I. 315 at 16.) CMT says that, in order for a prior art reference to properly be made of record, it must be disclosed to the PTO in an Information Disclosure Statement. (D.I. 330 at 11.)
 

 V. CONCLUSION
 

 For these reasons, it is hereby ORDERED that CMT’s Motion for Summary Judgment of Invalidity (D.I. 298) is DENIED.
 

 [1]
 

 . Section 102, Title 35 of the United States Code provides, in pertinent part:
 

 A person shall be entitled to a patent unless— (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or
 

 %
 
 sfc sfc ‡ sfc
 

 (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or
 

 % *
 
 *
 
 * 4: *
 

 (g) ... (2) before such person’s invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it....
 

 35 U.S.C. § 102.
 

 [2]
 

 .
 
 See supra,
 
 n. 1.