48 F.3d 1238
 36 U.S.P.Q.2d 1380
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re SIGCO RESEARCH.
 No. 93-1223.
 United States Court of Appeals, Federal Circuit.
 Feb. 17, 1995.
 
 BTTA
 REVERSED.
 Before NIES, CLEVENGER, and SCHALL, Circuit Judges.
 NIES, Circuit Judge.
 
 
 1
 This is an appeal from the decision of the Board of Patent and Trademark Appeals in the reexamination of U.S. Patent No. 4,627,192 ("the '192 patent"), affirming the Examiner's final rejection under 35 U.S.C. Sec. 103 of claims 1-12, 14-62, 64 and 70, as amended during the reexamination proceeding. We reverse.
 
 BACKGROUND
 
 2
 The invention of the '192 patent, was granted to Dr. Fick of Sigco Research in November 1986, and is owned by Lubrizol. As amended in reexamination, the claims are directed to genetically stable, true-breeding sunflower lines, plants and seeds which produce oil with enhanced oleic acid content. Typically, linoleic acid substantially exceeds the oleic acid content in conventional sunflower oils. Enhanced oleic acid content is desirable because oleic acid is oxidatively more stable than linoleic acid, which results in a sunflower oil with extended shelf life and utility at higher temperatures. All of the claims require approximately 80 percent or greater oleic acid in sunflower oil and must be true breeding for that trait.[1] The majority of claims also require a third element: a linoleic acid/oleic acid ("L/O") ratio of less than about 0.09.[2] Other claims have additional limitations such as seed color, cytoplasmic male sterility ("CMS") or fertility restoration.[3] A final group of claims (claims 4, 5, 47, 48, 56 and 57) require oleic acid contents of about 92 or 94 percent.[4]
 
 
 3
 Reexamination of the '192 patent was initiated in 1988 by third party competitors[5] of Lubrizol, based on seven additional references, only three of which are at issue here. Fick (1983) provides a brief overview of sunflower breeding in the United States and discloses sunflower lines that produce oleic acid percentages of 80 percent and as high as 90 percent on an individual plant basis. Pukhalsky provides an overview of sunflower breeding in the USSR in the 1960's and 1970's, including the development of the Pervenets variety with an oleic acid content of 70-75 percent by chemical mutagenesis techniques. Johnson discloses the use of conventional inbreeding techniques to obtain parental lines which are true-breeding for the semi-dwarfism trait, which is controlled by a single dominant gene.
 
 
 4
 In the First Office Action, the Examiner rejected claims 1-6, 26-28, 43-48, 51-57, 60, 64 and 70 under 35 U.S.C. Sec. 102(a) or (b), and rejected claims 7-25, 29-42, 49-50, 58-59 and 61-62 under Sec. 103 as obvious in view of Fick when taken with Pukhalsky, Johnson and Barabas.
 
 
 5
 Patent owner amended all of the claims to include the true breeding limitation for high oleic acid content. The Examiner withdrew the Sec. 102 rejections, maintained the Sec. 103 rejection as to claims 7-12, 14-25, 29-42, 49-50, 58-59, and 61-62 in view of Fick taken with Pukhalsky, Johnson and Barabas, and extended the Sec. 103 rejection to newly amended claims 1-6, 26-28, 43-48, 51-57, 60, 64 and 70 in view of Fick taken with Pukhalsky, Johnson and Poehlman.
 
 DISCUSSION
 
 6
 Under 35 U.S.C. Sec. 103, an invention is patentable if the differences between the claimed subject matter and the teachings of the prior art are such that the claimed subject matter as a whole would not have been obvious to one of ordinary skill in the art at the time the invention was made. Although obviousness is a question of law, we review the factual findings underlying the determination of obviousness by the Board under the clearly erroneous standard. In re Vaeck, 947 F.2d 488, 493, 20 USPQ2d 1438, 1442 (Fed.Cir.1991).
 
 
 7
 The determinative issue raised on appeal is whether it would have been obvious from the prior art to apply conventional plant breeding techniques such as those disclosed in Johnson to the Pervenets variety of sunflower disclosed in Pukhalsky to arrive at sunflower plants true breeding for the trait of at least 80 percent oleic acid content. The patent owner argues that success was unpredictable in establishing true breeding for the high oleic acid trait. The Board held it would have been obvious from Fick taken with Pukhalsky and Johnson. Since all of the claims were amended during the reexamination to recite the true breeding characteristic, the rejection of all the claims must be reversed if the Examiner has failed to establish a prima facie case of obviousness respecting the true breeding characteristic. We agree with appellant that the Examiner failed to do so.
 
 
 8
 The PTO has the burden under Sec. 103 of presenting a prima facie case, and can satisfy this burden by showing that the objective teachings in the prior art would lead one of skill in the art to combine the relevant teachings of the references. In re Fine, 837 F.2d 1071, 1074, 5 USPQ2d 1596, 1598-99 (Fed.Cir.1988). The Board concedes that it does not read Fick as disclosing sunflower lines which are true breeding for the high oleic acid trait. Instead, it states that it agrees with the examiner's conclusion "that it would have been obvious to one of ordinary skill in the art at the time of the present invention to develop such high oleic acid percentage sunflower lines which are true-breeding for this very desirable trait."
 
 
 9
 The cited art provides no suggestion that the trait of oleic acid content is true breeding. As the Board admits, Fick does not suggest that the 80 percent lines are true breeding. The unidentified "forms" with 89.5 percent oleic acid content disclosed in Pukhalsky were the result of chemical mutagenesis and cross-pollination. Johnson's disclosure of semi-dwarfism as a true breeding trait does not suggest that the genotype for high oleic acid, which was unknown at the time of the invention, is also true breeding. The prior art does not suggest to one skilled in the art to follow the conventional teaching of Johnson respecting inbreeding, particularly when the Russians, who were leaders in breeding sunflowers for altered fatty acid composition, continued to use chemical mutagenesis and cross-pollination. Rather the Russian references suggest that inbreeding, although otherwise obvious to try, would not succeed with Pervenets. See In re Dow Chem. Co., 837 F.2d 469, 473, 5 USPQ2d 1521, 1532 (Fed.Cir.1988) (rejecting the "obvious to try" standard). Since none of the references suggests that a line with high oleic acid content may be made true breeding, the Examiner has failed to make out a prima facie case of obviousness and the rejection must be reversed.
 
 
 10
 Since the claims which include the low L/O ratio limitation all contain the true breeding element, the rejection as to these claims also must be reversed.
 
 
 11
 Claims 4, 5, 47, 48, 56 and 57 are directed to seeds, plants and lines, respectively, the oleic acid contents of which are about 92 percent or about 94 percent. In addition to the fact that these claims contain the true breeding limitation, the prior art does not suggest that oleic acid contents as high as 92 percent and 94 percent could be obtained. The highest oleic acid values reported were 90 percent in Fick and 89.5 percent in Pukhalsky. Since there is no objective teaching in the prior art of sunflowers with so greatly enhanced oleic acid content and no teaching of the true breeding limitation, the rejection as to these claims is reversed.
 
 
 12
 The rejections of claims 11, 12, 19-24, 29, 31-33, 36-43, 51, 52, 58-60 under section 103 as unpatentable over Fick taken with Pukhalsky, Johnson and Barabas also are reversed. In addition to the true breeding characteristic of high oleic acid content, these claims include an additional limitation or combination of limitations inter alia for seed coat color, cytoplasmic male sterility ("CMS") and/or fertility restoration.[6]
 
 
 13
 Since the Examiner has failed to establish a prima facie case of obviousness respecting the true breeding limitation for 80 percent or greater oleic acid, we reverse the Board's rejections of the claims based on obviousness.
 
 
 
 [1]
 Claim 52 is illustrative:
 
 
 [52]
 A sunflower line consisting of a substantially uniform population of Helianthus annus plants which produce seeds having an oleic acid content of approximately 80% or greater, relative to the total fatty acid content of said seeds, said line being true-breeding for said oleic acid content
 
 
 [2]
 Claim 1 is illustrative:
 
 
 [1]
 A sunflower seed having an oleic acid content of approximately 80% or greater, relative to the total fatty acid content of said seed, and a ratio of the amount of linoleic acid in said seed to the amount of oleic acid in said seed of less than about 0.09, said seed being the product of a cross between (A) a first parent from a sunflower line which is true-breeding for said oleic acid content and (B) a parent from a second sunflower line
 
 
 [3]
 Claim 11 is illustrative:
 
 
 [11]
 A sunflower seed comprising a white seed coat and having an oleic acid content of approximately 80% or greater, relative to the total fatty acid content of said seed, said seed being the product of a cross between (A) a first parent from a sunflower line which is true-breeding for said oleic acid content and (B) a second parent
 
 
 [4]
 Claim 4 is illustrative:
 
 
 [4]
 A sunflower seed according to claim 2, wherein said oleic acid content is about 92%
 
 
 [5]
 One of the competitors, Pioneer, initiated a declaratory judgment action of invalidity of the '192 patent and the related '402 patent, which action is stayed pending this decision
 
 
 [6]
 Cytoplasmic male sterility and fertility restoration are used to produce an inbred line with no functional pollen to avoid random pollination by insects during commercial production of hybrid sunflowers. CMS lines are developed by backcrossing, wherein a desired line which has undergone inbreeding and selection for several generations is crossed with a plant with CMS. The offspring are then crossed with the inbred line and this process is repeated for six or seven generations. The final result is a plant which has the characteristics of the inbred parent but is male sterile. To counteract CMS, a CMS parent is crossed with a parent having a gene for fertility restoration. The next generation is then male fertile