*1368 NEWMAN, Circuit Judge,
dissenting.
This case reaches us on appeal from the PTO’s rejection, on the ground of obviousness, of all of the claims presented in this reissue divisional application of U.S. Patent No. 6,168,626 (the '626 patent). The patent, entitled “Ultra High Molecular Weight Polyethylene Molded Article for Artificial Joints and Method of Preparing the Same,” is directed to artificial joints having low friction and improved abrasion resistance due to the molecular and crystal orientation of this ultra high molecular weight polyethylene (UHMWPE).
The Hyon procedure and its effects are not shown or suggested in any reference, despite the long history and extensive scientific studies of all forms of polyethylene. From the court’s endorsement of the Board’s flawed analysis, I must, respectfully, dissent.
Discussion
The '626 patent was issued on January 2, 2001 with eleven claims. On May 8, 2002, Hyon requested that the patent be reissued with 262 additional claims, stating, as the reissue statute requires, that he had, through error and without deceptive intent, claimed less than he was entitled to claim. This assertion entitled Hyon to a full examination of all of the proffered claims. See 37 C.F.R. § 1.176(a) (“A reissue application will be examined in the same manner as a non-reissue, non-provisional application, and will be subject to all the requirements of the rules related to non-reissue applications.”); see also Manual of Patent Examination Procedure (MPEP) § 1440 (“[A]n original claim, if represented in a reissue application, will be fully examined in the same manner, and subject to the same rules as if being presented for the first time in an original non-reissue, nonprovisional application....”).
The reissue claims on this appeal are directed to a method of producing a UHMWPE block or artificial joint component, whereby a controlled amount of irradiation is applied to the article to introduce a “very small amount” of cross-linking, followed by heating and compression-deformation of the molded article. The '626 patent summarizes the method as follows:
This UHMWPE molded article having molecular orientation or crystal orientation can be obtained by irradiating a low dose of a high energy ray to a raw UHMWPE molded article to introduce a very small amount of crosslinking points in polymer chains so as to be crosslinked slightly, then by compression-deforming the crosslinked UHMWPE molded article after heating up to its compression-deformable temperature, and by cooling the molded article while keeping the deformed state.
'626 patent, col.2 11.46-55. This appeal concerns twenty-seven claims of the reissue divisional application, of which claims 40, 41, and 84 can be viewed as representative:
40. A method for producing an ultra high molecular weight polyethylene block, comprising:
(a) crosslinking an ultra high molecular weight polyethylene block having a molecular weight not less than 5 million by irradiating the block with a high energy radiation at a level of at least 1 MR;
(b) heating said crosslinked block up to a compression deformable temperature below the melting point of the UHMWPE;
(c) subjecting said heated block to pressure; and then
(d) cooling said block.
41. A method for producing an ultra high molecular weight polyethylene block according to Claim 40, wherein said irradiation is gamma irradiation at a level of from 1 MR to 5 MR.
*1369 84. A method for producing an ultra high molecular weight polyethylene artificial joint component for implantation in a human or other animal, comprising:
(a) crosslinking an ultra high molecular weight polyethylene block having a molecular weight not less than 5 million by irradiating the block with a high energy radiation at a level of at least 1 MR;
(b) heating said crosslinked block up to a compression deformable temperature below the melting point of the UHMWPE;
(c) subjecting said heated block to pressure; then
(d) cooling said block; and
(e) processing said cooled block to form said component.
The reissue examiner, affirmed by the Board, held all of the claims unpatentable on the ground of obviousness over U.S. Patent No. 5,030,402 to Zachariades (July 9, 1991) in view of U.S. Patent No. 3,886,-056 to Kitamaru et al. (May 27, 1975). The Zachariades patent, entitled “Process for Producing a New Class of Ultra-High-Molecular-Weight Polyethylene Orthopaedic Prostheses with Enhanced Mechanical Properties,” describes a process that starts with heating the polyethylene, deforming it by compression, and cooling the deformed polyethylene. Zachariades mentions the optional post-processing condition of radiation cross-linking, as follows:
The final product 19 in FIG. 2D can be separated from the perimeter mass 18 by stamping or other process after its removal from the mold 10, or after thermal (annealing) or post-processing conditions, e.g., radiation cross-linking.
'402 patent, eol.6 11.50-54. The reissue examiner acknowledged that there is a difference between Zachariades and Hyon, stating that for Zachariades cross-linking may be performed after deformation of the polymer, whereas Hyon requires a “slight amount” of cross-linking before deformation. Examiner’s Answer at 6 (Dec. 29, 2009) (“The difference from the instantly claimed method is that Zachariades does not mention crosslinking UHMWPE by irradiation before compression deformation.”). The examiner held that the Kitamaru reference filled this gap.
The Kitamaru patent, entitled “Process for Producing a High Melting Temperature Polyethylene Employing Irradiation and Orienting,” describes a process for treating polyethylene fibers and films in which radiation cross-linking is the first step, followed by melting, stretching while molten (optionally under pressure), and cooling. Kitamaru describes the process as follows:
In accordance with the present invention, the starting polyethylene is first crosslinked by irradiation with an ionizing radiation so as to produce crosslinked polyethylene having a gel content of at least one weight percent.
... [T]he crosslinked polyethylene is then extended or stretched in the molten state at a temperature of at least anisotropic melting point of the polymer.... Conventional extending means are applicable to the invention. For example, a conventional continuous drawing equipment may be used for stretching polyethylene fibers and films. Further, rolling and inflation apparatuses known in the art can be used for polyethylene films. If transparent polyethylene film or sheet is to be obtained, it is preferable to conduct the extending under an increased pressure....
The crystallization subsequent to the extending in the molten state can be conducted at any temperature, because the rate of crystallization under the extended state is extremely rapid. Actually, after extending of crosslinked sample in the molten state, products having *1370 many advantageous properties such as very high melting temperature, excellent mechanical properties, excellent transparency and etc. are obtained independent of the condition for the crystallization.
'056 patent, eol.211.45-49, eol.3 11.11-43.
Kitamaru is directed to cross-linking and extending polyethylene fibers and films, and does not relate to producing a polyethylene mass suitable as an artificial joint having advantageous mechanical properties and dimensional stability. It is noteworthy that Zachariades, seeking mechanical strength and dimensional stability, did not follow the known Kitamaru processing sequence, but instead cross-linked the polyethylene after deformation, not before. Nonetheless, the examiner held that a person of ordinary skill in the field of the invention would have known to do what neither Kitamaru nor Zachariades did, and would have known or expected that this departure would produce “low friction and remarkably improved abrasion resistance,” in the words of Hyon’s '626 patent, col.2 11.59-60. The examiner concluded:
It would have been obvious to one skilled in the art at the time of the invention to irradiate UHMWPE, as taught by Kitamaru et al in an analogous method, to provide a slightly crosslinked irradiated UHMWPE perform [sic: preform] as the starting UHMWPE to be used in the compression molding method steps for orienting and extending UHMWPE taught by Zachariades.
Examiner’s Answer, at 6.
It is not disputed that neither Kitamaru nor Zachariades shows or suggests starting with slight cross-linking of the UHMWPE, followed by heating and compression deformation. Nonetheless, the Board found that the Hyon method “appears to be nothing more than the predictable use of a prior art element ... according to its established function.” Board op. at 10. The Board does not explain the source of its prediction, other than the Hyon method itself.
The Board held that a person of ordinary skill would have expected to combine aspects selected from the Zachariades and Kitamaru processes. As to which aspects to select and combine, the only guidance comes from Hyon, for the prior art contains no “apparent reason to combine the known elements in the fashion claimed by the patent at issue.” KSR Int’l Co. v. Teleflex Inc., 550 U.S. 398, 418, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007). The Board reasoned backward from the Hyon method, to hold that since Kitamaru cross-linked prior to extending fibers and films, it was obvious to modify Zachariades by slightly cross-linking the bulk polymer pri- or to molding. The Board stated:
Kitamaru focuses on cross-linking prior to extending as the reason for providing the improved properties. Accordingly, the art provides the focus on using the cross-linking step prior to molding.
Based on the art’s focus on cross-linking prior to molding to improve the properties of the material, using such a technique appears to be nothing more than the predictable use of a prior art element (i.e., cross-linking prior to molding) according to its established function (i.e., to improve material proprieties such as increase the melting point).
Board op. at 10. However, Hyon stated in the '626 patent that a high dose of radiation (as in Kitamaru) did not improve abrasion resistance: “[T]hough the irradiation of an ultra high dose of £4>-ray was tried for improving the UHMWPE, it was made clear that coefficient of abrasion increases and abrasion loss does not decrease.” '626 patent, col.l 11.61-64.
The Board’s suggestion that it was obvious to perform the method that neither *1371 Zachariades nor Kitamaru performed nor suggested, is supported solely by the teaching in Hyon’s patent. See In re Fritch, 972 F.2d 1260, 1266 (Fed.Cir.1992) (“It is impermissible to use the claimed invention as an instruction manual or ‘template’ to piece together the teachings of the prior art so that the claimed invention is obvious.”) (quoting In re Gorman, 933 F.2d 982, 987 (Fed.Cir.1991)); see also Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1138 (Fed.Cir.1985) (“The invention must be viewed not with the blueprint drawn by the inventor, but in the state of the art that existed at the time.”).
When the technologic field is mature, apparently small changes that produce unexpected results or improved properties are of heightened significance. Nothing in the record suggests that a person of ordinary skill would have foreseen that Hyon’s method of slight radiation cross-linking followed by heating and compression deformation would produce the described benefits. See In re Gartside, 203 F.3d 1305, 1314 (Fed.Cir.2000) (“the Board’s decision must be justified within the four corners of th[e] record”).
The Board cited no reason to expect that the Hyon method would produce a superi- or polyethylene artificial joint. Zachariades, like Hyon, recognized the problem, and stated that “the fabrication of ultrahigh-molecular-weight polyethylene products to achieve enhanced mechanical properties and good dimensional stability is a challenging task.” '402 patent, col.2 11.39-42. Zachariades commented that “it is very difficult to control this important parameter [good dimensional stability].” Id. at col.2 11.28-29. Hyon in the '626 patent also pointed to the difficulty of improving UHMWPE properties, stating that “it is regarded that any improvement in dynamic properties of the UHMWPE by chemical modification reached its limitation, and it is regarded to be difficult to obtain a UHMWPE molded article having a more excellent abrasion resistance and lower friction.” '626 patent, col.2 11.5-9. The '626 patent explains the Hyon improvement:
[T]he present inventors tried to obtain a molded article of a low friction and to improve an abrasion resistance by introducing molecular orientation or crystal orientation into a finished product by means of, not a chemical modification method, but a physical modification method.
This approach has never been attempted, not only in Japan, but also in other countries. The idea to endow the polyethylene molded article for artificial joints with molecular orientation or crystal orientation is the very creative, and it is sure that this invention, if actually carried out, will be applied to artificial joints all over the world.
Id. at col.2 11.26-37. It is only after Hyon demonstrated how to achieve this improved result that the Board was able to plug the prior art steps into the template of the Hyon method. However, as explained in Interconnect, 774 F.2d at 1143, “[w]hen prior art references require selective combination by the court to render obvious a subsequent invention, there must be some reason for the combination other than the hindsight gleaned from the invention itself.”
The Kitamaru and Zachariades references describe different sequences and degrees of cross-linking, heating and cooling, and stretching and deformation. Zachariades compresses solid polyethylene below its melting temperature and then cross-links it, and Kitamaru cross-links fiber or film and then melts and stretches it. Neither of these references, nor any other authority, suggests that the Hyon steps would achieve the Hyon improvement. As stated in Life Technologies, Inc. v. Clon *1372 tech Laboratories, Inc., 224 F.Bd 1320, 1326 (Fed.Cir.2000), “[Reasonable expectation of success is assessed from the perspective of the person of ordinary skill in the art. That the inventors were ultimately successful is irrelevant to whether one of ordinary skill in the art, at the time the invention was made, would have reasonably expected success.” See also In re Vaeck, 947 F.2d 488, 493 (Fed.Cir.1991) (“[T]he reasonable expectation of success must be founded in the prior art, not in the applicant’s disclosure.”).
The selective combination of aspects of Kitamaru and Zachariades is achieved only with hindsight knowledge of Hyon’s achievement, for nothing in either reference or elsewhere in the prior art suggests this modification. The Court in KSR cautioned that “[a] factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning.” 550 U.S. at 421, 127 S.Ct. 1727. The Board’s analysis is contrary to the Court’s guidance. In In re Lee, 277 F.3d 1338, 1344 (Fed.Cir.2002) this court stated that “[i]t is improper, in determining whether a person of ordinary skill would have been led to this combination of references, simply to ‘[use] that which the inventor taught against its teacher.’ ” (quoting W.L. Gore v. Garlock, Inc., 721 F.2d 1540, 1552 (Fed. Cir.1983) (alteration in original)). See also In re Dow Chem. Co., 837 F.2d 469, 472-73 (Fed.Cir.1988).
The Board erred in its analysis, for “the factual inquiry whether to combine references must be thorough and searching.” McGinley v. Franklin Sports, Inx., 262 F.3d 1339, 1351-52 (Fed.Cir.2001). I respectfully dissent from the court’s endorsement of the Board’s flawed analysis.